Number 21-7054. Council, when you're ready, you may proceed. Thank you, Your Honor. May the police, court, and counsel. My name is Ryan Villa. I represent the appellant, Ricardo Martinez. We are asking that this court reverse the district court's firearm enhancement under 2D1.1 applies and that the safety valve reduction did not apply. There are two different and distinct analysis that the court makes with respect to those two guidelines. And the facts are critical in any situation and especially critical here. I think what we have in this case is a factual situation that has not occurred before in the published and unpublished cases that the parties have relied on and cited to the court. And that is primarily with the temporal aspect of the firearm enhancement. And as the court knows, the firearm enhancement will apply if you have evidence that the gun, the drug trafficking, and the defendant were in the same place at the same time. Now certainly it doesn't have to, that evidence doesn't have to occur all at once, but there does have to be some evidence of that temporal proximity. And in this situation, the district court didn't have that in applying the firearm enhancement. Could I just ask you, in terms of the temporal and spatial proximity firearm defendant offense, and let's take the firearm enhancement first, does the government need to show a connection between a firearm, the defendant, and the specific offense, the actual, in this instance, controlled by, or does it need to show only a connection between the firearm, the defendant, and the defendant's drug trafficking activity generally? The latter, Your Honor. It doesn't have to be a connection to the offense, like with respect to the safety valve, for the firearm enhancement. Just as the court said, generally the firearm in the same place and time as the defendant and the drug trafficking activity. Would you answer the same for the safety valve on that particular point? No, Your Honor, I think that's the difference. For the safety valve, it does have to have a connection to the offense, in addition to being more than just mere constructive possession, what the court has called active possession for the safety valve application. So I think that's the difference between the two analyses that the court needs to make. But I think in both situations, the district court erred. Now, the standard of review for the firearm application is de novo, it was preserved, and what the court needs to look at is, did the district court correctly apply the facts to the law? Okay, I had a question on that one, too, because I was on the standard of review in preparing for this. Our recent decision in United States v. Portillo-Uranga, one point in our opinion, we said, the district court did not clearly err by concluding a temporal and spatial relation existed between the firearms drug trafficking activity and Portillo-Uranga, which raised the question in my mind, what is the standard of review? I mean, we say there, clearly error, but you're saying it's de novo. It is. I think clearly erroneous would apply if we're talking about a factual determination that the court made that was clearly erroneous based on the record, and then it's still a de novo review of correctly applying the law. In this appeal, we contend that we're not raising a clearly erroneous issue with respect to the district court's factual findings, but just the court's application of the law. However, with respect to the safety valve, there was a clearly erroneous finding, a fact, by the trial court when it found that Mr. Martinez was aware of the firearm, because that was the critical finding, to deny application of the safety valve. So I do think... I mean, it sounds like both of those, that it's hard for you to say one of those was a factual finding, and the other one, you say, well, I don't contest the factual finding. It was legal error to conclude that there was a temporal and spatial proximity of everything. Because the only difference is knowledge as to the last one, as to the safety valve issue. I think that's right. I think because the knowledge doesn't matter for the firearm enhancement, and so we don't have to contest that factual finding. Understood. But what you have is in the first one, you have a factual finding as to three knowledge finding as well, and you don't think there's evidence to support that. Correct. And so your position is it's clear error where his determination of a factual finding of knowledge was clearly erroneous. That's right. And I guess... But I guess you wouldn't contest that his finding as to the other three things were clearly erroneous. I think what we would... I mean, certainly for the firearm enhancement, we would say to the extent he found that Mr. Martinez knew the firearms were there, that was clearly erroneous. But the knowledge part doesn't matter. Right, but knowledge doesn't matter for the firearms enhancement. That's right. So I think if you take the firearm enhancement, you just look at the facts that when the drug transactions took place, when Mr. Martinez was last seen on the property, when the firearms were then found, you can just do a de novo review. And those are the facts in the PSR, right, that the district court adopted. That's right. There was no evidence taken at sentencing, no evidence presented. It was simply relying on the pre-sentence report. So you said that this case presents unique facts. What do you think are the critical differences between your case and the recent Portillo-Uranga case? Well, Portillo-Uranga, I think, is most prominently the defendant in that case was at the ranch when the law enforcement showed up and found the firearms. And he had, in fact, ran and hid under the porch. They caught him. They go in and search and they find a firearm. It also, at least the facts indicated in Portillo-Uranga that it was that defendant's ranch. Now here, I mean, we're slicing it pretty thinly. It wasn't technically Mr. Martinez's ranch. It was his brother's ranch. Does that matter? I think it does, Your Honor, because I think if it was his home where he lived, yeah, I think we lose, you know, because how can we say, well, like we say here... It wouldn't matter which mobile home. If he owned the ranch, your position is you would lose. Well, I think it would matter which mobile home. What I'm suggesting is if he lived in the mobile home where the firearms at issue here were found, I think we lose because he owned it. The record here reflects he didn't own that mobile home. He used it. You know, his brother, the inferences, his brother allowed him to use it. Sounds like he had control over it though, right? He could get in and out. Sure, and had access to it, but he wasn't living there. He wasn't residing there. He wasn't even staying there, you know, overnight like in the Zavalza-Rodriguez case, which is a safety valve case. But, you know, he simply went there to the record we have. He went there and met with the confidential informant to sell drugs. And in those three meetings, the co-defendant who did live in the other mobile home brought the drugs over. And that's how the drug transactions took place. So with respect to the firearm enhancement, the situation that is different, Judge Matheson, is that the defendant wasn't there at the time the firearms were discovered. You see that in a lot of the cases that both parties cite. You also don't have what is in a lot of the cases that both parties cite, either an admission by the defendant that he knew about the guns, or helped procure the guns, or, you know, encouraged the co-conspirators to have the guns, or proffered information from other witnesses like accomplices, co-defendants, that the defendant knew about the guns. Counsel, would you agree that the district court's basis for applying 2D1.1 was constructive possession? I think, yes. I mean, that's... Go ahead. Well, you know, getting back to the discussion I had with Judge Carson, you know, he made the finding under the safety valve that he was aware of the guns. I'm just talking about the firearms enhancement. Yeah. I mean, so putting that finding aside, I think that is the only basis in the record that for 2D1.1 enhancement is constructive possession. And was that the same basis that was used to apply the safety valve? No, I don't think so. It's not particularly clear when the judge rules on it, but if that's his basis, you know, that's a misapplication of the law, because this court has made clear that constructive possession is not enough for denial of the safety valve. So he said he actually knew. He was aware. Yeah, I mean, he made a determination about where the guns were found, where the drugs were found. You know, he ruled on the record, although it was a little unclear. The parties here dispute exactly what he found, but he makes that finding when he's talking about applying the firearm enhancement. I'm sorry. Oh, go ahead. What was the factual basis for the court's conclusion that he was... that your client was aware? None that I can determine, Your Honor. I mean, there's nothing in the PSR, nothing that was presented by the parties. And he denied awareness, or he disclaimed awareness? That's right. He objected, said he did not know about the firearms. There was no witness testimony, no proffers that he did know from any of the... The only witness, if you will, was Mr. ... the co-defendant, Mr. Medina Tamayo's girlfriend, or the person that lived with him, who said Mr. Medina Tamayo had guns, and he would shoot the guns, and he brought the guns over. But there was no witness testimony that ever placed Mr. Martinez in the same room with guns, or Mr. Martinez having knowledge of the guns in any way, shape, or form. No statements, nothing like that. Do we have anything in the record to show that someone other than Mr. Martinez had access to Mobile Unit 1? Yes, I think Mr. Medina Tamayo clearly had access. I mean, there wasn't any information in the record, for instance, that only Mr. Martinez could get into that mobile home. No one else had access. His brother owned the ranch. There was a deed that indicated the brother owned the ranch, so there's certainly other folks that had access to the property and access to Mobile Home 1. You seem to be relying significantly on the fact that, although he had access to Mobile 1, he didn't live there, he didn't own it, and that's one of the critical distinctions with some of these other cases. Yes, absolutely. I mean, I think that's the distinction that I see from the other enhancements that we don't have here, is ownership of the property and then the temporal aspect of being with the guns at the same time, or some information that the guns were present during the drug transactions. Was there any information as to how often his brother went to the ranch? No, nothing in the record. So, I mean, the fact that the brother owned the place doesn't really establish anything, does it? Because it could be similar to me owning a house and renting it to you, letting you use it, and I never go there, and you have control over the premises. It could be that situation. But we just don't, we have no evidence either way. That's right, there's no evidence that, for instance, Mr. Martinez was renting it from his brother, or the brother had allowed him to live there, or anything like that. But we do have evidence that at least consistently for a period of, say, three weeks, he was out there trafficking drugs from the location. Yes. Okay. Yes, and that wasn't in dispute at all. It was, the issue was when the drug transactions did take place, there was no information there were firearms present at that time. Right, fair enough. And that, I think, is the critical distinction, right? If he rented the place, Mr. Martinez, if he owned the place, I think we'd be in a lot more trouble on the firearm enhancement. And perhaps on the safety valve as well, but just for the last minute of my time, I'll focus a little bit on that. As the court does, held in Zavalza-Rodriguez, you look at these facts sort of like, as the court, I think, poetically analogized, you know, the morning star and the evening star, it's the same celestial body, but we look at it differently for safety valve purposes. And here, it can't be based on- In that regard, does it matter that the government has the burden on the firearms enhancement, the defendant has the burden on the safety valve? I think it matters, but it doesn't matter in this case. Because in this case, there still has to be some evidence of active possession or awareness by Mr. Martinez' acknowledgment. I think the cases indicate if we have a co-defendant possessing a gun, there has to be some evidence that Mr. Martinez encouraged it or knew about it or helped with the process in order to And I see my time has concluded, if there aren't any more questions. Thank you, counsel. Thank you. May it please the court, counsel. Good morning, your honors. My name is James Braun, and I'm to the scope of the safety valve and whether it applies just to the offensive conviction as opposed to all relevant conduct. The commentary to 5C1.1, I think it's comment three, says that it includes all relevant conduct in addition to the offensive conviction. So the same as the 2D1.1B1 enhancement, relevant conduct would apply here. And that's what we have, where the drugs that were found during the execution of the search weren't those who were relevant conduct to the count that the defendant actually pled to. Now under 2D1.1B1, a two-level increase in the defendant's offense level applies if a firearm was possessed. And the commentary states simply that the enhancement applies if a firearm was present. And so this court's cases have focused on the temporal and spatial proximity between a firearm and the drug trafficking activity. And the key is that you have a firearm and drugs or drug paraphernalia in the same place at the same time. And that's what we have here. We have— Counsel, if—so you agree, right, that constructive possession was the basis for the 2D1 enhancement? Right. And that cannot form the basis to deny safety valve? That's not correct in our view. Right. Under what authority? Andrade Vargas. Okay, and is that an unpublished case? That's an unpublished opinion, but it's discussed in Hargrove. Okay, how is it—how do the facts there—how do we distinguish the facts there from the ones here? Because it seems that Zavalza-Rodriguez is the key case in our circuit, the key published authority on safety valve. Do you agree? Right. Yes. Okay, so aren't there factual distinctions that Andrade brings up that are just simply not present here? Well, the main distinction is simply that in Andrade Vargas you have the defendant admitting to knowledge of the guns. But other than that, there's really not that much different. In Andrade Vargas— How is that not just a dispositive distinction for purposes of the district court's finding that the defendant here was aware? Because the law has never required an admission in order to prove knowledge. In many cases where knowledge is an issue, you don't have an admission from the defendant. Well, you don't have anything here. You have no guns seen during the controlled buy, no guns when he was arrested, no guns at his house in Arkansas. He wasn't charged with 924C. He never admitted to possessing firearms. He objected—consistently objected to the application of the enhancement. And we don't even know where the transaction takes place. So I think that you're right. We don't have to have an admission to prove knowledge. But I don't see what else there is here upon which the district court could base its finding, and I would like to know. Okay. As in any case where knowledge is an issue and you don't have an admission, you can't read the defendant's mind. You have to look at circumstantial evidence. And I think that's what the district court did here. It looked at the fact that this was property that the defendant maintained for the purpose of selling and storing his drugs. He had conducted multiple transactions there over the course of the month preceding the search warrant. He had said that he was expecting drugs, and sure enough, there were drugs there when the search warrant was executed. Those were his drugs. They were attributed to him. And as this court has held over and over, firearms are tools of the drug trade. And so on those facts, it was a reasonable inference that the person who's maintaining that property, who owns those drugs, has knowledge of the firearms that are there to protect the drugs. Why wasn't that the basis for 2D1? Well, 2D1.1 doesn't require the same amount of active possession. But if it existed, why did the district court make an effort to make clear that this was a constructive possession case? I can't say what the district court was thinking, but I imagine it's because that level of active possession is part of this court's case law for the 2D1.1B1 enhancement. There, it's more of a, as the court held in Zavalza, it's a possession by proximity. And so there, the defendant doesn't even have to be in possession of the firearm. It can be a co-defendant's possession that's enough. Really what matters there, as I was saying, is the focus on the proximity between the guns and the drug trafficking activity. And then the defendant's connection is the fact that they're his drugs, and they're there at the same time. So then it becomes his burden to prove or to establish by a preponderance that the firearms were not connected to the drug offense. And he failed to meet that burden of establishing that. And so I think that's what the difference is. It just, there's not the same requirement of proving the constructive possession in 2D1.1 because of the case law. So the point is that the record, if the district court had wanted, let's say, to base 2D1.1 on more than what the government was required to prove, it could have in this case? It could have. And I think the court can certainly look to, this court can look to the district court's subsequent finding in the safety valve context that the defendant had knowledge. It can apply that same factual finding to 2D1.1. Do you think that makes, does that make sense? They seem totally internally inconsistent to me. Maybe I'm missing something. And I'm sorry if I'm not understanding the question. To me, they don't seem inconsistent because it's the same, it's the same knowledge. The defendant, again, for the reasons I discussed, why he had, why it was reasonable to infer knowledge of the firearms, of the rifles with the drugs in the mobile home for safety valve purposes, that same factual finding would apply to the firearm enhancement under 2D1.1. It's the same firearms. So as I, as I was listening here, I jotted down a few notes, and it seems that there are a few things that might be working against you here. One, you had the CI who'd been in there in the three weeks prior, but not in the week prior, but in the three weeks prior, the CI saw no guns. Is that fair? I don't think that is fair. I don't think the... Is there evidence in the record that the CI saw guns? I don't think the absence of evidence is evidence of absence. Okay. How about this? You have no evidence that the CI saw guns. That's right. You have no evidence that anyone saw guns in there until you searched it and found them. That's right. Okay. And then you have an issue that there's possibly access to this property by people other than the defendant.  Okay. Well, this is sort of the same thing. You have no, I guess what I'm saying is you have no evidence that other people couldn't access it. I mean, for all you know, they could. The guy next door could. His brother could. Associates could. Well, we have... There's no evidence about that at all. No, there's not. Okay. And the lack of evidence can be a problem sometimes. But let me, and then it says, then I'm looking at this, and there's no evidence of anything that might have happened out there in the week prior to the search. No. So we can, maybe we can draw an inference based on the three weeks of visits that there was no mention of firearms, that there were no firearms there then. But we have no idea what was going on out there in between the last buy and the search. Right. And, I mean, don't those things that we were just talking about cut against a finding of active possession? I don't believe they do, Your Honor, because the district court didn't rely on the deals that happened prior to prove that guns were present during those buys. It was more to show the defendant's connection to the property and why it's reasonable to infer that on the day of the search warrant, whether guns were present on previous occasions or not, that on the day of the search warrant, the rifles that were there were rifles that the defendant had knowledge of. And the reason it's reasonable to infer he had knowledge is because of all of the connections he has to that property. The deals he's done prior, the fact that he's been found to have maintained that property, he owned the property before he quick claimed it to his brother. But you agree, don't you, that if the evidence was undisputed that those guns belonged to his brother, say, and everybody agreed, all of the evidence said, those are my brother's guns, they weren't my guns, that he wasn't in active possession then? No. If he also had joint possession, that's enough. And I think Andrade Vargas says that. So that sounds a lot like your argument on 2D1.1. No, because there, a co-defendant's possession without joint possession can be enough. This would be joint possession where the defendant has active possession as well as other people. And we've had that in other cases. Andrade Vargas, the defendant claimed that it belonged to someone else who asked him to hold it while he was in Mexico. And the case, and I can't remember the name of the case off the top of my head right now, I think it's Montgomery, where you have a boyfriend, girlfriend, and she says, I didn't know about the guns. But that would have been joint possession as well. And she was denied safety vows. You know, you've mentioned the co-defendant a couple of times. Are you relying on the co-defendant to support your argument at this point? Certainly not for safety vows. For 2D1.1, a co-defendant's possession can be enough. That's not what the district court relied on, and it's not what we have relied on either. That was my question. So you're not relying on that? No, no. You know, there's one thing on the firearm enhancement, and I think it connects up with Judge Carson's questions. This is what the judge said at the sentencing hearing. It says, the court finds by a preponderance of the evidence that the defendant was in possession of the firearm during the commission of the incident offense. And I don't understand how the judge could say that. How could that be correct without evidence of a firearm at the controlled box? Right. I think that the judge probably misspoke, and I would imagine the judge was talking about relevant conduct. Because it was all, for purposes of the offense level, it was all lumped together as relevant conduct. The defendant pled to count too, but all of the appropriately as relevant conduct. And so I would imagine that's what the court was referring to, the offense being. And that's exactly how 5C1.1, the commentary, defines offense as, including the offense of conviction and any relevant conduct. So I don't think it would be legally incorrect for the judge to have said that, or dispositive in any way. If we affirmed on the firearm enhancement, would that be an extension of the law? On the 2D1.1B1? Yeah. No, I don't believe so, Your Honor. No. I mean, you look at Andrade Vargas, and I hate to keep going back to that, but there the issue was solely safety valve. But he had also been attributed with the 2D1.1B1 enhancement. He didn't even challenge that. And again, there are similar facts. He wasn't there on the property. He claimed the gun belonged to somebody else. He had knowledge of it. He admitted knowledge. But here, as I said, even without an admission, we can prove knowledge. There's a reasonable inference of knowledge, and that's what the judge did. And that is subject to the clearly erroneous standard. And the defendant has not established that that was a clearly erroneous factual finding. And if I could go back to Judge Carson's question about proof of who else may have had access, to the extent that relates to the safety valve, that was the defendant's argument pointed to, look at all the people who had access to that property. It's not my gun. He didn't do that. He didn't put on any evidence at all. The only indication that the defendant didn't have knowledge was a statement in a pleading filed by the defense attorney. Now, at least in Zavalza, I believe you had the defendant after his arrest saying, it's not my gun, fingerprint it. And the district court could rely on that. And there, the district court believed it. That would have also been subject to a clearly erroneous standard of review. I don't believe the government even challenged that factual finding. Of course, access to the mobile home is also relevant to the firearm enhancement. And the government had the burden there. And the government didn't put on any evidence. Well, we did put on evidence because the evidence that was in the pre-sentence report came from the reports. Well, other than the PSR. But also, it's a different standard again. That's the more passive possession, possession by proximity, where establishing that the guns and the drugs in the same place at the same time, a gun is present. And under the commentary to the guidelines, that applies. Where the drugs are relevant conduct that are attributable to the defendant. Would it be fair to say that the difference between the two of you on the safety valve is whether the PSR permits a reasonable inference of knowledge or doesn't permit a reasonable inference of knowledge? I think that's fair, yes. Whether the evidence contained in the pre-sentence report supports a reasonable inference of the defendant's knowledge. And we submit that it does. And that's what the court based its finding on. And again, but I think even with that, we have to go back. That in and of itself is a bit of an inference. Because the court said it found by a preponderance that the defendant was aware. Didn't say a whole lot about how that inference came about. Right. The court didn't go into a lot of detail about what it based that finding on. But I think this court can look at the record as a whole to make that finding that it's not clearly erroneous on this record. But I also think that that has to be viewed in context of the burden of proof. That it was the defendant's burden to prove his entitlement to the safety valve. To prove that he did not possess a firearm. And he put forward no evidence that he didn't possess a firearm. And so even though we're looking at whether the factual finding… He thought that the PSR was enough for his position, right? But it's silent as to whether he… I understand. But he could rely on the PSR. He could. It just is silent. Yes. I see that I'm out of time. Can I ask you one question? Sure. Do you have in your mind a case with a similarly close call where the court decided it based on the burden issue? Not that I can think of. Okay. I'm sorry. Thank you. Thank you, counsel. Thank you both for your arguments this morning. I believe we're out of time for both sides. Did he have any last… You're out of time. I'm sorry. Thank you. The case will be submitted and counsel are excused.